UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

HENRY EARL CUNNINGHAM #576657    CIVIL ACTION NO. 15-cv-2878

VERSUS    CHIEF JUDGE HICKS

STATE OF LOUISIANA    MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

A Bossier Parish jury convicted Henry Earl Cunningham ("Petitioner") of bank fraud, for which he was sentenced to ten years imprisonment. His conviction and sentence were affirmed on appeal. State v. Cunningham, 77 So.3d 477 (La. App. 2d Cir. 2011). Petitioner also pursued a post-conviction application in state court. He now seeks federal habeas corpus relief on the grounds that (1) the evidence was insufficient to support his conviction, (2) his sentence was excessive, and (3) trial counsel rendered ineffective assistance. For the reasons that follow, it is recommended that his petition be denied.

### Sufficiency of the Evidence

**A. The Evidence**

Earline Thomas testified that she was a retired school teacher who lived on Russell Road in Shreveport. She had two banking accounts with Regions Bank. One was her personal account, and another was an account she shared with Mamie Brown, a neighbor. Ms. Brown was elderly, and Ms. Thomas used the joint account to help ensure that Brown's

utility bills were paid on time. No other persons were authorized to sign checks on the shared account.

Shalondrea "Shea" Holmes is Ms. Thomas' great niece, but Holmes refers to Ms. Thomas as her grandmother. Holmes had a difficult upbringing and lived with Ms. Thomas on and off for much of her life. She was living with Ms. Thomas at the time of this incident, even though she had once stolen checks from Ms. Thomas and forged her signature on them. Holmes was on probation for check-related charges when she met Petitioner in 2009. Petitioner was a cab driver who often gave Holmes rides to local casinos. Holmes testified that she paid Petitioner cash for his cab fares. She said she tipped well when she won, but she lost all of her money a couple of times and could not pay for a ride home.

Ms. Holmes called Petitioner for a ride on August 28, 2009. She admitted, after receiving a ride, that she did not have any money to pay him then. Holmes testified that she told Petitioner, "All I have are these checks and these are grandma's checks and she's out of town." Petitioner responded that he was out of money and needed cash to pay fees associated with his cab. Holmes testified that she borrowed a pen from Petitioner and, in his presence, filled out a check on the Mamie Brown/Earline H. Thomas account. The check was made payable to Petitioner for $415. The memo line stated that it was for "maintenance work." Holmes signed her grandmother's name to the check.

Holmes testified that Petitioner knew her name and called her Shea. She said that Petitioner knew that she had a gambling problem and that her grandmother did not want her going to the casinos. Holmes also testified that she told Petitioner that her grandmother

checked her bank statements. "He already knew that she's going to find out and I had no authority."

Petitioner went into a Regions Bank branch alone and presented the check. He provided his driver's license as identification and was able to cash the check. Holmes testified that he gave her $200 and kept the other $215. Holmes admitted that she initially lied to a detective and lied to her grandmother about her connection to the check. She also admitted that she was in jail at the time of trial because her probation was revoked based on this incident. She hoped that things might go smoother for her because of her testimony, but she insisted her testimony was truthful.

Ms. Thomas quickly noticed that her account had been debited $415 for a check that she did not sign and was payable to a person she did not know. She asked Holmes about the check, and Holmes denied knowledge of the check or knowing a Henry Cunningham. Ms. Thomas went to Regions Bank and filled out an affidavit that stated her check had been forged. The bank refunded her money and commenced an investigation.

Detective Leander Matthews obtained the information assembled by the bank, including surveillance video images, and he obtained an arrest warrant for Petitioner. Detective Matthews testified that, as soon as he told Petitioner that he was there in reference to a report filed by Regions Bank for bank fraud, Petitioner began to say:

> Yeah, I know what this is all about. I've already talked to (bank officer) Chuck Upchurch on the telephone. I, you know, haven't done anything wrong. The young lady that gave me that check was Shalondrea Holmes.

Petitioner was arrested and taken to an interview room. He stated that he understood his Miranda rights and would talk to the detective, but he refused to sign a waiver card or

allow recording. Detective Matthews said that Petitioner told him that he believed Ms. Holmes "was trying to play him" by acting like she did not have money to pay his cab fare. He recounted how Holmes said she had some checks from her grandmother that were her only potential source of funds. Petitioner said that Holmes told him that she did not have any ID, so Petitioner would have to cash the check. Petitioner admitted that Ms. Holmes wrote out the check and that he cashed it, deducted his cab fare, and gave Holmes the balance of the money. He did not provide Matthews an exact dollar amount. Detective Matthews conceded on cross-examination that Petitioner never specifically told him that he knew Ms. Holmes did not have permission to write checks on behalf of her grandmother. But he did say that he should have known that something was not quite right with the check.

### B. State Court Decision

The crime of bank fraud is defined in La. R.S. 14:71.1. It states that whoever "knowingly executes, or attempts to execute, a scheme or artifice to do any of" certain listed acts shall be imprisoned for not more than ten years and may be ordered to pay a fine and restitution. The listed acts include to "defraud a financial institution" or to obtain any of the funds or other property owned by or under the custody or control of a financial institution by means of false or fraudulent pretenses, practices, transactions, representations, or promises.

Petitioner challenged the sufficiency of the evidence on direct appeal. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).  The <u>Jackson</u> inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." <u>Herrera v. Collins</u>, 113 S.Ct. 853, 861 (1993).

The appellate court recited the <u>Jackson</u> standard and the elements of the crime.  The court acknowledged Petitioner's showing that much of the conduct constituting the scheme or artifice to defraud was committed by Ms. Holmes.  She stole the check, forged a signature, and never specifically told Petitioner that she lacked authorization to use the checks.  The court found that the evidence was nonetheless sufficient because Petitioner played a substantial role in the scheme or artifice and actually presented the check for payment.  On the critical question of whether he participated knowingly, Petitioner had admitted to the detective that he should have known that something was not quite right with the check.  The court also pointed out that Petitioner should have been alerted to the fraud by the circumstances, which included Ms. Holmes forging her grandmother's name and falsely writing that the check was for maintenance work.  Finally, Petitioner demonstrated guilty knowledge by splitting the proceeds with Ms. Holmes.  The state court concluded that when this evidence was viewed in the light most favorable to the prosecution, a rational juror could have found that Petitioner was guilty.  <u>State v. Cunningham</u>, 77 So.3d at 480-82.

**C. Analysis**

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).  Thus, a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard.  It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard.  Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

Petitioner's argument to this court is the same that he offered in state court.  He attacks the credibility of Ms. Holmes, but credibility determinations are squarely within the province of the jury.  "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review."  Schlup v. Delo, 115 S.Ct. 851, 868 (1995).

Petitioner argues that he did not steal or forge the check himself; he was merely a cab driver who was trying to get paid, and it was Ms. Holmes who stole the check and forged a signature.  Those arguments are insufficient to overcome the degree of deference to the state court decision that must be afforded under Section 2254(d).  The state court conducted a thorough review of the evidence, pointed out strengths and weaknesses in the prosecution's case, and determined in a well-reasoned opinion that the evidence was sufficient under the Jackson standard.  Petitioner may not obtain habeas relief unless he shows that the appellate court's decision was an unreasonable application of Jackson.  "An unreasonable application is different from a merely incorrect or erroneous application; the

state court decision must be an objectively unreasonable application." Rogers v. Quarterman, 555 F.3d 483, 489 (5th Cir. 2009). He has not come close to meeting that heavy burden.

**Excessive Sentence**

Petitioner appeared for sentencing with counsel, who gave a long and passionate argument in favor of a sentence for time served or, alternatively, a short prison term. Counsel argued that the loss to the bank was small, the evidence of guilt was weak, and there was no use of violence or other coercion involved in the crime. He pointed out that Petitioner had been employed and supporting his family at the time he was arrested.

The judge responded that the presentence investigation showed "an ongoing lifestyle of committing serious felony offenses all the way from 1986 to 2010." That criminal history included convictions and prison sentences for several drug crimes, theft, receiving stolen property, and a handgun violation. There were seven felony convictions in all. The judge found that Petitioner needed correctional treatment that could be provided most effectively by commitment to an institution, so he imposed the maximum prison sentence of ten years at hard labor, with credit for all time served. Defense counsel made a passionate argument for reconsideration. The judge thanked him for "an eloquent and excellent argument" but found that the sentence was warranted given that Petitioner had 24 years to change his lifestyle but had not done so. Tr. 538-51. (The State represents that Petitioner was later adjudicated an habitual offender and given an enhanced 15-year sentence, but Petitioner does not directly challenge that aspect of his sentence in his federal petition.)

Petitioner argued on direct appeal that his ten-year sentence was excessive. The appellate court reviewed the aggravating and mitigating factors and determined that the trial court did not abuse its great discretion or that the maximum sentence of ten years was so shocking or grossly disproportionate to warrant relief under Article I, Section 20 of the Louisiana Constitution. State v. Cunningham, 77 So.3d at 482-83.

Petitioner's excessive sentence arguments on appeal in state court relied solely on state law. Tr. 577-80. His argument in his federal petition does not invoke any particular legal basis. A federal habeas court does not determine if the state courts properly applied state law. Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991). Accordingly, Petitioner's arguments under Louisiana law do not present a federal claim that is cognizable on habeas review. Lane v. Warden, 2013 WL 1152713, *4 (W.D. La. 2013) (rejecting similar sentencing challenge).

Assuming Petitioner exhausted and now presents a federal claim related to his sentence, there is no merit. Habeas relief would be allowed only if the state court's decision was an unreasonable application of "clearly established Federal law, as determined by the Supreme Court," as required by Section 2254(d)(1). The Supreme Court has explained that this means only the holdings of Supreme Court decisions. Woods v. Donald, 135 S.Ct. 1372, 1376 (2015).

The Court in Lockyer v. Andrade, 123 S.Ct. 1166 (2003) reviewed its decisions and rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions, capped by felony petty-theft after he stole approximately $150 worth of videotapes. The

sentence did not permit habeas relief because it was not contrary to or an unreasonable application of clearly established gross disproportionality principle set forth in Supreme Court holdings. The Court admitted that its precedents in the area were not clear, which makes it quite difficult to obtain habeas relief under the deferential Section 2254(d) standard. Petitioner, who has multiple felony convictions and received a ten-year sentence, has not pointed to any Supreme Court holdings that would afford him habeas relief.

**Ineffective Assistance of Counsel**

    **A. Introduction**

Petitioner argues that his attorney rendered ineffective assistance of counsel. To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

    **B. Impeachment of Ms. Holmes**

Petitioner argued in his post-conviction application that trial counsel was ineffective because he failed to attack the testimony given by Ms. Holmes about how the proceeds of the check were divided. Holmes testified at trial that Petitioner kept $215. Petitioner pointed out that Holmes said in a police interview that Petitioner retained $115. He argued that counsel failed to take advantage of this discrepancy to impeach Ms. Holmes and destroy her credibility.

The record shows that defense counsel did cross-examine Ms. Holmes on this very issue. He first established that she had felony convictions and previously had engaged in

fraudulent check activity. Holmes admitted that she was then serving time for probation revocation and that she hoped to gain something from her testimony at trial. Counsel got Ms. Holmes to admit that she initially lied to the detective and only began to tell the truth when she realized that she was going to jail anyway. Ms. Holmes admitted on cross-examination that she lied to the detective and lied to her grandmother. Questioning then turned to what Holmes said about how the proceeds were split.

> Q: How much money did Henry keep?
>
> A: $215.
>
> Q: He kept $215?
>
> A: Uh-huh (affirmative).
>
> Q: Is that what you told the detective?
>
> A: No, I believe I told the detective that he kept $115, or something like that.
>
> Q: Uh-huh (affirmative). So once again, it's another lie?
>
> A: Another mistake.

Tr. 459-60. Judge John Robinson, the state court trial judge, denied the post-conviction application after pointing out the above-quoted cross-examination. He added that the outcome of the trial was not determined by how the money was split between Petitioner and Holmes. Tr. 734-36. Petitioner applied to the appellate court for a writ, which was summarily denied "on the showing made." Tr. 889. The Supreme Court of Louisiana denied writs without comment. Doc. 1-3, pg. 76.

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

Petitioner argues that the transcripts of Ms. Holmes' statement to the detective should have been presented to the jury as impeachment evidence that would have destroyed her credibility and could have lead the jury to a difference outcome. Petitioner overlooks the fact that, as pointed out by the state court, counsel cross-examined Holmes on this point and got her to admit that she lied. There was no more that counsel could have done with that inconsistency. Petitioner has not demonstrated that counsel's performance with respect to this issue fell below an objective standard of reasonableness or that the state court's adjudication of this claim was an unreasonable application of Strickland.

**C. Counsel's Arrest and Bar Discipline**

Petitioner has often claimed that he did not receive notice of certain actions, so the record is littered with potentially untimely filings that make it virtually impossible to resolve all potential exhaustion and procedural bar defenses. One of those delayed filings was a "Motion to Expand the Record" that attempted to add a post-conviction ineffective

assistance of counsel claim based on the fact that defense counsel was arrested for driving while intoxicated.

Petitioner submitted information that indicates counsel was arrested on September 30, 2010, which was a few weeks before the trial began on October 26, 2010. Petitioner filed a complaint of some sort against counsel with the Louisiana Attorney Disciplinary Board. The record of those proceedings is not before this court, but the portion submitted by Petitioner includes a statement by counsel that his arrest had no effect on his representation of Petitioner, and it appears that counsel completed the requirements imposed on him by disciplinary counsel. The LSBA directory indicates that he is currently eligible to practice.

The state raises a procedural bar defense to this claim, but it may also be denied on the merits. Glover v. Hargett, 56 F.3d 682, 684 n.1 (5th Cir. 1995). It appears that this claim was not adjudicated on the merits in state court, so the federal court would apply a *de novo* standard of review. Hoffman v. Cain, 752 F.3d 430, 437 (5th Cir. 2014). The claim lacks merit even under *de novo* review because a general contention that counsel may have been incompetent because he was later subjected to discipline unrelated to the trial proceedings does not render counsel's prior work ineffective or entitle his past clients to have their convictions vacated. Petitioner must demonstrate specific deficient performance in his case that prejudiced the outcome. Bridge v. Lynaugh, 838 F.2d 770, 776 (5th Cir. 1988) (counsel later disbarred for cocaine felony; relief denied absent specific examples of deficient performance); Brown v. Warden, 2014 WL 4287808, *3 (W.D. La. 2014) (attorney later arrested on drug charges and disbarred); and Jones v. Cain, 2009 WL

792205, *12 (E.D. La. 2009) (attorney disbarred six years after trial). The trial record reflects that counsel did an admirable job and vigorously contested the State's case at trial and sentencing. Petitioner has not pointed to any specific deficiencies in performance related to counsel's arrest or later disciplinary proceedings. He is not, therefore, entitled to habeas relief with respect to this final claim.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a

certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

      THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of December, 2018.

                                            Mark L. Hornsby
                                            U.S. Magistrate Judge